23 C. C. P. A. (Patents)

## In re CROWELL.
### Patent Appeal No. 3524.

Court of Customs and Patent Appeals.
Nov. 25, 1935.

LENROOT, Associate Judge, dissenting in part.

———◆———

Milburn & Milburn, of Washington, D. C. (Joseph F. Westall, of Los Angeles, Cal., and J. W. Milburn, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting appealed claims Nos. 1, 6, and 8 in appellant's application for the reissue of patent No. 1,828,100.

The claims read:

"(1) The method of cementing wells, which consists of: first, closing by a traveling plug, the bore of a normally substantially open well casing at a predetermined point intermediate its upper and lower ends; second, opening, by fluid pressure from the top of the well, normally closed ports located in said casing above said predetermined point of casing-bore closure; third, forcing a liquid cementing mixture downwardly through said casing and outwardly through said ports; fourth, closing valves controlling said ports, thus holding the cement in the annular space outside the casing."

"(6) The method of cementing wells, which consists of: first positioning the casing a short distance from the bottom of the well; second, establishing circulation through the casing and the annular space outside the casing; third, forcing by fluid pressure from the top of the well, a liquid cementing mixture downwardly through the casing; fourth, closing the bore of the casing at a predetermined point intermediate its upper and lower ends; fifth, continuing the application of fluid pressure to force said liquid cementing mixture outwardly through normally closed ports located in said casing above said point of closure of said casing; sixth, discontinuing pressure to allow spring-actuated valves of said ports to close, thus holding the cementing mixture in the annular space outside of the casing."

"(8) The method of cementing wells, which consists of: first, establishing fluid circulation through the well-casing and through the annular space outside of the casing; second, inserting in its upper portion a plug carrying means slidingly fitting said casing; third, forcing a liquid cementing mixture into said casing above said plug and downwardly through said casing advancing said plug before it; fourth, closing the bore of said casing by the stoppage of said plug at a predetermined point intermediate the upper and lower ends of said casing; fifth, continuing the application of fluid pressure from the top of the well to force open normally closed ports in said casing above said predetermined point of closure, and to force said cementing fluid outwardly through said ports and into the annular space outside of the casing; sixth, releasing pressure from the top of the well to permit the valves controlling said ports to close, thus holding the cement in the annular space outside of the casing."

The references are:
Perkins et al., 1,011,484, December 12, 1911.
Crowell, 1,432,017, October 17, 1922.
Crowell, 1,502,179, July 22, 1924.
Crowell, 1,601,239, September 28, 1926.
Davis et al., 1,641,741, September 6, 1927.
McKee, 1,677,975, July 24, 1928.
Boynton, 1,687,424, October 9, 1928.
Halliburton, 1,860,669, May 31, 1932.

It appears from the record that the application upon which patent No. 1,828,-100 issued was a division of parent ap-

plication Serial No. 171,851, filed March 1, 1927, which matured into patent No. 1,828,098, October 20, 1931.

During the prosecution of the parent application, appellant canceled claim 23 contained therein. It reads: "23. Well casing having an unobstructed open bore throughout its length, a normally closed lateral port in the casing adapted to open responsive to pressure in the casing, a plug slidable in the bore of the casing, and means for anchoring the plug in the unobstructed bore of the casing below the port and above the lower end of the casing so as to shut-off the entire bore of the casing below [the port and leave the entire bore of the casing unobstructed above the port]."

The Board of Appeals held that as appealed claims 1 and 8 were for substantially the same subject-matter as that defined in canceled claim 23, appellant was estopped from presenting them in the involved application. The board rejected appealed claim 6 on the ground that it contained new matter not disclosed in the original specification.

It will be observed that appealed claim 1 differs from canceled claim 23 in that the former states that the bore of the casing is "normally substantially open," whereas the latter specified a casing having an "unobstructed open bore throughout its length"; and · that whereas the appealed claim provides for closing of valves controlling the ports in the casing, such valves are not expressly referred to in the canceled claim.

Counsel for appellant contend that canceled claim 23 is "only for a subcombination," and that the provision for a normally substantially open bore of a casing, plus the additional step of closing valves controlling the ports in the casing, contained in appealed claim 1, calls for a patentable combination not disclosed in the prior art, nor claimed in the canceled claim.

Appellant states in his specification that it is advantageous "to have the full bore, or substantially the full bore, of a string of casing available when carrying on· drilling operations or washing down the string of casing, .and it is also desirable when circulating a washing medium preparatory to a cementing operation to utilize the bore of the casing, which should not be ·substantially impeded or restricted, and then to supply the cementing mixture through the unobstructed bore of the casing, or, at least, through a bore of the casing not restricted or obstructed to such an extent as to seriously impede or prevent the operation referred to." Appellant frequently refers in his specification to the bore of the casing as being "unobstructed," "substantially unobstructed," and "substantially open," and it is perfectly clear that the bore of the casing must be substantially open in order to carry out appellant's process.

It will be observed, therefore, that appellant has used the terms "unobstructed," "substantially unobstructed," and "substantially open" interchangeably. Accordingly, for the purpose of this case, the term "unobstructed," contained in canceled claim 23, should be interpreted as having the same meaning as the term "substantially open," contained in appealed claim 1. See Walker on Patents (6th Ed.) vol. 1, § 227. Obviously, then, a "casing having an unobstructed open bore throughout its length" means a casing having a substantially open bore.

It will further be observed that canceled claim 23 provides for a "normally closed lateral port in the casing adapted to open responsive to pressure in the casing."

The solicitor for the Patent Office insists that the quoted language in canceled claim 23 clearly implies a means to close the port in the casing at the proper time after it is opened by pressure in the casing, and that as it is old, as disclosed in the Crowell reference, patent No. 1,601,239, issued September 28, 1926, to close the ports in the casing by means, such as a "spring," it would not involve invention to add such element to the combination defined in canceled claim 23.

We quote from that reference:

"It is a further object of the invention to provide an extremely simple but practical valvular control, adapted to normally positively close the valves, but readily yielding for opening thereof, when cement is forced downwardly through the casing. * * *

"The shifting of valve 11 longitudinally of the casing rather than radially thereof, eliminates the possibility of the valvular control striking the wall of the well, irrespective of restrictions in the well

bore, and full opening of the valve is thus assured.

"After discharge of all of the cement, the valve collar 11 is positively reseated by its spring 12, so as to close the discharge ports and thus permit the cement to harden without the possibility of it reentering the bore of the string of casing. The back pressure valve 7 is subsequently drilled out in usual manner to provide an unobstructed passage through the bore of the string of well casing."

■ If, as stated in canceled claim 23, the lateral port in the casing is *normally closed,* but is adapted to open responsive to pressure in the casing for the purpose of permitting the cementing operation, a means adapted to close the port subsequent to the cementing operation is necessarily implied. That feature being old and well known to the art, as disclosed in the patent to Crowell, No. 1,601,239, it would not involve invention to add it to the combination defined in canceled claim 23. We are of opinion, therefore, that appealed claim 1 is not patentably distinct from canceled claim 23.

As pointed out by counsel for appellant, appealed claim 8 calls for a "plug carrying means slidingly fitting said casing," and the closing of the bore of the casing "by the stoppage of said plug at a predetermined point intermediate the upper and lower ends of said casing"; whereas canceled claim 23 calls for a "plug slidable in the bore of the casing, and means for anchoring the plug in the unobstructed bore of the casing below the port and above the lower end of the casing so as to shut-off the entire bore of the casing below [the port and leave the entire bore of the casing unobstructed above the port]."

Counsel for appellant contend that the quoted language contained in canceled claim 23 implies that it is the "means for anchoring the plug" which wholly or partially closes the bore of the casing; whereas, in fact, the bore of the casing is entirely closed by the plug itself, as stated in appealed claim 8. Counsel for appellant further point out that, in a decision by the Board of Appeals in a companion case, referred to in its decision in the case at bar, it was stated that appellant was the first "to provide a plug slidably fitting the casing and force it down into the casing to close

it so that the bore is unobstructed up to the time the cementing is to occur," and that the anchoring means in appellant's device did not obstruct the bore in the casing.

It clearly appears in appellant's specification that the means for anchoring the plug does not in any way obstruct the bore of the casing, and that it is the plug itself which entirely closes the bore of the casing below the port. We quote from the specification:

"Below the ports 4 the bore of the ported section of the casing preferably has an increased diameter forming an elongated annular recess 7 terminating in upper and lower shoulders 8 and 9 formed by continuations of the uniform bore of the string of casing; and the lower shoulder 9 forms a seat for a plug 10 adapted for expansion into recess 7, while the upper shoulder 8 is preferably inclined to permit ready expansion of the plug when it is lowered through the bore of the casing to the level of the recess.

"In order to provide anchoring means for plug 10 in recess 7, the plug is shown as provided with an intermediate reduced diameter 11 adapted to receive arcuate locking slips 12 which are adapted to contract wholly within the outer periphery of the plug.

"Bias springs 13 fixed to the plug in back of the slips engage the latter so as to tend to expand the same beyond the periphery of the plug, and expansion of the slips is preferably guided and limited by abutments 14 on the plug engaging in notches 15 in the slips. As the plug is lowered through casing A, the uniform bore of the latter contracts the slips to permit free passage of the plug, and when the plug is opposite recess 7, the annular enlargement formed thereby permits springs 13 to expand the slips so that they rest on shoulder 9 and thereby anchor the plug.

"Packing is preferably mounted on the plug to insure a tight shutting-off of the casing when the plug is anchored in recess 7, the parts being so arranged that when the plug is anchored its packing closes the bore of the casing just below ports 4."

The plug referred to in canceled claim 23 as a "plug slidable in the bore of the casing," and in appealed claim 8 as "a plug carrying means slidingly fitting said casing," is described in appellant's spec-

ification as "a plug," an "anchored plug," and a "plug * * * adapted for expansion" into the elongated annular recess in the bore of the casing.

Obviously, then, the language "a plug slidable in the bore of the casing, and means for anchoring the plug in the unobstructed bore of the casing * * * so as to shut-off the entire bore of the casing below [the port and leave the entire bore of the casing unobstructed above the port]," contained in canceled claim 23, in view of appellant's specification, could not reasonably be construed as meaning that the means for anchoring the plug either partially or substantially closes the bore of the casing.

The sixth step in appealed claim 8 relates to the closing of the valves controlling the ports in the casing.

Our discussion relative to the closing of the valves controlling the ports in the casing, called for in claim 1, is applicable to the sixth step in appealed claim 8, and we deem it unnecessary to repeat it.

We are of opinion that the Board of Appeals was right in holding that appealed claim 8 is not substantially different from canceled claim 23.

Counsel for appellant challenge the correctness of the decision of the board holding the doctrine of estoppel applicable to the subject-matter of appealed claims 1 and 8, in view of the fact that canceled claim 23, although for the same subject-matter, was contained in a "copending apparatus case"—the parent application, and not in the divisional application.

It should be said here, however, as stated by the solicitor for the Patent Office, that the co-pending case referred to by counsel for appellant " * * * was the parent of the application resulting in the patent sought to be reissued. In other words, appellant divided his parent case, got a patent on the divisional application and now seeks to reissue that patent. It is clear that any claims canceled in the parent case to get a patent could not be reinserted in a reissue of a patent granted on the parent case, and it seems equally clear that such claims should neither be allowed in a reissue application of a patent granted on a divisional application of the parent case. It would be a strange anomaly indeed if a deliberately cancelled claim which could

not be revived in reissue application of a parent case could be revived by the mere expedient of dividing the parent case and instead of seeking a reissue of the parent case, seek a reissue of the patent resulting on the divisional application. The proceedings in the divisional case are merely a continuation of those in the parent case."

■ It may be that, in applying the doctrine of estoppel in this case, the Board of Appeals, as stated by counsel for appellant, "has gone further than any previous decision in rejecting a reissue on such ground." But, however that may be, we think the doctrine of estoppel is clearly applicable, and that appellant is estopped to claim subject-matter in the present application for reissue which he deliberately cancelled in claim 23 of the parent application. See In re Murray, Jr., 64 F.(2d) 788, 20 C. C. P. A. (Patents) 1046, and cases cited.

■ As hereinbefore stated, appealed claim 6 was rejected by the Board of Appeals on the ground that it contained new matter not disclosed in the original specification.

The present application contains the following description of the invention defined in appealed claim 6, which, it is conceded by counsel for appellant, was not contained in the divisional application which matured into patent No. 1,828,098:

"As is well understood by those of skill in this art, various and diverse conditions are met in the process of shutting off water from oil wells. Sometimes, for instance, the casing becomes frozen and cannot be raised from the bottom so as to permit circulation or cementing through the bottom of the casing; at other times while the casing may be raised, caving of such character and to such an extent may have occurred that sufficient circulation cannot be obtained, nor, in such cases, can the cementing fluid be properly placed through the bottom of the casing or effectively to a sufficient height above the bottom of the casing. Again, sometimes a good formation seat is available, and at other times not. Occasionally a partial cementing may be accomplished through the bottom of the casing, but it may be deemed desirable to continue the operation of forcing the cementing fluid outwardly through one or more of a series of ports above the bottom of the casing in addition to the attempted cement--

ing at the bottom of the well. In the process of my present invention, barriers may be used or omitted, and indicating plugs may be used or omitted during the course of cementing or attempting to cement through the bottom of the casing. The process of the present invention is adapted to all such varying conditions, the provisions for circulation or cementing, or both, through lateral ports intermediate the ends of the casing and located at any predetermined point or points, either separately or in conjunction with circulating or cementing, or both, through the bottom of the casing, during all of which operation any substantial built-in closure or partitioning off of the casing is avoided, constituting advantages which make my process of great adaptability and therefore of great value as an improvement in this art. * * *

"Steps old in this art, consisting of circulating through the bottom of the casing and of cementing through the bottom of the casing, are not prevented or impeded in any manner by the improvement herein described; on the contrary, they are made part of the present method, and it is contemplated that said steps or either of them may be used in conjunction with either or both of the steps of circulating or cementing through ports in the casing intermediate the top and bottom of the casing, all of which are comprised as elements within my process of shutting off water from a well."

Counsel for appellant argue that the alleged new matter contained in the quoted excerpt amounts only to a statement of matters long known to the art; that such matter was inserted in the reissue application "on the theory that the original description was defective or insufficient as not fully showing the uses of the invention"; that if the alleged new matter is entirely eliminated, the original specification upon which the reissue application is based amply supports appealed claim 6, if it be read in the light of the prior art; and that, therefore, the tribunals of the Patent Office erred in holding that claim 6 contains new matter.

We are unable to concur in the views expressed by counsel for appellant. It is clear, we think, that the matter contained in the quoted excerpts does not relate merely to the uses of an invention already described, but, on the contrary, is, in fact, new matter, and discloses for the first time the combination of steps contained in appealed claim 6. We must hold, therefore, that the tribunals of the Patent Office reached the right conclusion. See In re Collins, 75 F.(2d) 1000, 22 C. C. P. A. (Patents) 1053, and cases cited.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, dissents as to claim 6.